1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,

11              Plaintiff,                    No. 2:11-mc-00064 LKK KJN

12        v.

13   PATRICIA K. THOMAS,

14              Defendant and
             Judgment Debtor.            <u>FINDINGS & RECOMMENDATIONS</u>
15   _____/

16              Presently before the court is plaintiff's amended application for a writ of

17   continuing garnishment ("Application"), seeking the garnishment of "at least" 70 percent of

18   defendant's disposable earnings in furtherance of the payment of a criminal restitution balance of

19   $1,860,660.43, calculated as of October 3, 2011 (Dkt. Nos. 3, 14).[1]  The court heard this matter

20   on its law and motion calendar on November 10, 2011, entered an interim order at defendant's

21   suggestion, and permitted the parties to file supplemental briefing regarding the Application in

22   light of defendant's recent retention of counsel.  (See Order, Nov. 14, 2011, Dkt. No. 18.)  The

23   parties filed supplemental briefs (Dkt. Nos. 20-21, 25).  Although defendant filed her brief nearly

24   _____

25        [1] This case proceeds before the undersigned pursuant to Eastern District of California Local
     Rule 302(c)(7) and 28 U.S.C. § 636(b)(1).  The related criminal action is <u>United States v. Thomas</u>,
26   2:02-cr-00152 LKK-1 (E.D. Cal.).  (Related Case Order, Dkt. No. 4.)

                                           1

one week late (see Order to Show Cause, Dec. 21, 2011, Dkt. No. 23), the undersigned has

considered her brief in drafting these findings and recommendations.  Having considered the

briefs, prior oral arguments, and record in this case, the undersigned recommends that plaintiff's

Application be granted and that defendant's wages be garnished in an amount of 25 percent of

disposable earnings in furtherance of the payment of the underlying criminal restitution balance.

I.      BACKGROUND

        A.      Brief Factual Overview

                The record and defendant's representations in this case support that defendant has

a gambling addiction that has contributed, in addition to other factors, to negative circumstances

in defendant's life.  (See, e.g., Thomas Decl. ¶¶ 7-8, Dec. 1, 2011 ("Thomas Decl."), Dkt. No. 20,

Doc. No. 20-1.)  These circumstances appear to include a petition for bankruptcy filed by

defendant and her husband, and the entry of a criminal judgment against defendant arising from

defendant's embezzlement of a large sum of money from her former employer.

                On October 2, 2002, a criminal judgment was entered in United States v. Thomas,

No. 2:02-cr-00152-01 (E.D. Cal.), which reflects that defendant pled guilty to one count of "Mail

Fraud, Aiding and Abetting" in violation of 18 U.S.C. § 1341.  (Judgment in a Criminal Case

("Judgment"), Oct. 2, 2002, attached as Ex. A. to Pl.'s Response to J. Debtor's Req. for Hearing

on Writ of Cont. Garnishment (Wages) ("Pl.'s Response"), Dkt. No. 14.)  In addition to being

ordered to serve 37 months in prison and 36 months under supervised release, defendant was

ordered to pay $1,651,574.92 in restitution and an assessment of $100.00.[2]  (See Judgment at 2-3,

5-6.)  The Schedule of Payments in the Judgment states: "Payment of the total fine and other

criminal monetary penalties shall be due . . . immediately."  (Id. at 6.)

                On or around July 5, 2005, defendant was released from the Bureau of Prisons and

shortly thereafter became employed by Brasher's Sacramento Automotive Auction ("Brasher's

---

[2] Defendant was ordered to pay restitution to Universal Network Development Corporation
in an amount of $1,401,574.92, and to Craig Caudill in an amount of $250,000.00.  (Judgment at 5.)

1   Auction") as a clerk, earning $11.00 per hour. (Jochem Decl. ¶¶ 7-8, Oct. 6, 2011, Dkt. No. 14,

2   Doc. No. 14-2.) Defendant is currently a Factory Department Manager at Brasher's Automotive,

3   earning approximately $33.125 per hour. (Id. ¶ 8.) According to Brasher's Auction, defendant's

4   gross bi-weekly pay is $2,650.00, and her disposable earnings[3] are $2,097.73. (Id.; see also

5   Acknowledgment of Serv. & Answer of Garnishee (Wages) at 2 ("Answer of Garnishee"), Dkt.

6   No. 7.) Brasher's Auction also indicated that defendant voluntarily contributes $159.00 per pay

7   period to an employee-sponsored retirement fund. (Answer of Garnishee at 2.)

8          Plaintiff represents that as of October 6, 2011, defendant had paid a total of

9   $19,495 in restitution. (Jochem Decl. ¶ 6.) Defendant represents that she has been attempting to

10   making restitution payments at a rate of $300 per month, and that she does not believe she has

11   missed a payment since her release from prison.[4] (See Def.'s Req. for Hearing at 3, Dkt. No. 9.)

12   Plaintiff asserts that defendant "has been paying $300 per month towards her restitution" since

13   March 17, 2008. (Jochem Decl. ¶ 16.)

14      B.   Procedural History Related to the Application

15          On July 1, 2011, plaintiff filed an application for a writ of continuing garnishment

16   of defendant's wages, and filed an amended application on July 11, 2011 (Dkt. Nos. 1, 3).[5] The

17   Clerk of this court executed a Writ of Continuing Garnishment that required Brasher's Auction,

18   as defendant's employer and garnishee, to withhold defendant's disposable earnings until the

19   court issued a further order (Dkt. No. 5, Doc. No. 5-2). Plaintiff subsequently filed proofs of

20   service that confirmed service of statutorily required notices and documents on defendant and

21

22      [3] "'Disposable earnings' means that part of earnings remaining after all deductions required by law have been withheld." 28 U.S.C. § 3002(5).

23

24      [4] At the November 10, 2011 hearing, defendant's counsel represented that the payment of $300 per month was the result of a recommendation by the probation department regarding the amount that defendant could pay on the basis of her starting wage at Brasher's Automotive.

25

26      [5] The amendment to plaintiff's application does not appear to be material to the resolution of the Application. It appears that plaintiff amended its initial application to reflect that defendant had paid more money in restitution than plaintiff had stated in the original application.

1   Brasher's Auction (Dkt. Nos. 5-6).

2           On July 25, 2011, Brasher's Auction filed a document entitled "Acknowledgment

3   of Service and Answer of Garnishee (Wages)," which acknowledged receipt of the Application

4   and provided information about defendant's gross pay and disposable earnings (Dkt. No. 7).

5           On August 5, 2011, plaintiff filed a document entitled "Notice and Instruction to

6   Judgment Debtor Re: Garnishment and Information Regarding Request for Hearing" (Dkt.

7   No. 8).  Appended to this document is a document entitled "Claim for Exemption Form,

8   Exemptions Under Federal Law (18 U.S.C. § 3613)" ("Claim for Exemption Form"), which was

9   completed by defendant, who at the time was proceeding without counsel, and indicates

10  defendant's belief that she is entitled to exemptions from garnishment for: (1) "Wearing apparel

11  and school books"; (2) "Fuel, provisions, furniture, and personal effects"; and (3) "Books and

12  tools of the trade, business, or profession" (id. at 5-6).  Also on August 5, 2011, defendant

13  exercised her right to request a hearing regarding the Application, and the request appended a

14  letter from defendant stating her grounds for relief from the level of garnishment sought through

15  the Application (Dkt. No. 9).[6]

16          On the basis of defendant's request for a hearing, the court set a hearing on

17  September 8, 2011.  (Minute Order, Aug. 17, 2011, Dkt. No. 10.)  The parties subsequently filed

18  two stipulations to continue the hearing that were approved by the court, the latter stipulation

19  premised on defendant's retention of counsel (Dkt. Nos. 11, 13, 15-16).

20          The undersigned ultimately held a hearing on the Application on November 10,

21  2011.  At the hearing, defendant's counsel requested, for the first time, a continuance of the

22  hearing so that he could submit an additional written response to plaintiff's Application.  Over

23  plaintiff's objection, the undersigned permitted defendant to file a supplemental brief and

24  plaintiff to file a reply to defendant's forthcoming supplemental brief.  (Order at 2, Nov. 14,

25

26          [6] A courtesy copy of defendant's request for a hearing appended copies of bills and financial
    documents that were not filed on the public docket, but remain in the undersigned's chambers.

2011.)  At defendant's counsel's suggestion, the undersigned imposed an interim order regarding defendant's continued payment of restitution pending final resolution of the Application:

> Defendant shall pay as restitution, on an interim basis, 25% of her gross bi-weekly pay directly to the office of the United States Attorney for the Eastern District of California.  [Defendant's] next such payment shall be made on November 18, 2011, and such payments shall continue on a bi-weekly basis until entry of a final order on plaintiff's Application.

(Id.)

At the November 10, 2011 hearing, the undersigned strongly encouraged defendant to address and file documentation concerning several aspects of her request for relief from increased garnishment.  For example, defendant seeks an exemption from a garnishment order so that she may tithe to her church on a monthly basis, which defendant initially claimed was required so that she may attend her church.  The undersigned advised defendant that she should file a declaration of a church official substantiating that tithing in the amount suggested by defendant is *required* for church attendance.  Defendant failed to submit such a declaration, and similarly failed to address or document in her late-filed supplemental brief additional points raised by the undersigned at the hearing.

As noted above, defendant and plaintiff filed supplemental briefs (Dkt. Nos. 20-21).  However, defendant only filed her brief after the court issued an Order to Show Cause ("OSC") addressed to defendant's failure to file a supplemental brief.  (Order to Show Cause, Dec. 21, 2011.)  Although the undersigned has considered defendant's supplemental brief, the undersigned has entered an additional OSC regarding defendant's counsel's repeated failures to comply with the court's orders.  (OSC, Jan. 10, 2012, Dkt. No. 29.)

II.      GENERAL LEGAL STANDARDS

Pursuant to the Federal Debt Collection Procedures Act, "[a] court may issue a writ of garnishment against property (including nonexempt disposable earnings) in which the debtor has a substantial nonexempt interest and which is in the possession, custody, or control of a person other than the debtor, in order to satisfy the judgment against the debtor."  28 U.S.C.

§ 3205(a).[7]  The Federal Debt Collection Procedures Act defines "nonexempt disposable earnings" as "25 percent of disposable earnings, subject to section 303 of the Consumer Credit Protection Act."  28 U.S.C. § 3002(9).  It further defines "disposable earnings" as "that part of earnings remaining after all deductions required by law have been withheld."  Id. § 3002(5).  It also provides that "[c]o-owned property shall be subject to garnishment to the same extent as co-owned property is subject to garnishment under the law of the State in which such property is located."  28 U.S.C. § 3205(a).

However, in terms of application, the Federal Debt Collection Procedures Act provides the following limitation: "To the extent that another Federal law specifies procedures for recovering on a claim or a judgment for a debt arising under such law, those procedures shall apply to such claim or judgment to the extent those procedures are inconsistent with this chapter."  28 U.S.C. § 3001(b).  Another such federal law upon which plaintiff relies is 18 U.S.C. § 3613, which provides for the use of civil remedies, such as garnishment, for satisfaction of an unpaid fine.  Although 18 U.S.C. § 3613 predominantly speaks in terms of "fines," 18 U.S.C. § 3613(f) provides: "In accordance with section 3664(m)(1)(A) of this title, all provisions of this section are available to the United States for the enforcement of an order of restitution."

Pursuant to 18 U.S.C. § 3613(a), and subject to exceptions, the "United States may enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law."  And "[n]otwithstanding any other Federal law (including section 207 of the Social Security Act), a judgment imposing a fine may be enforced against all property or rights to property of the person fined."  Id.  However, there are two sets of relevant exceptions to Section 3613(a)—provided in 18 U.S.C. §§ 3613(a)(1) and (a)(3)—which impact this garnishment proceeding and are discussed in more

---

[7]  Pursuant to 28 U.S.C. § 3013, a "court may at any time on its own initiative or the motion of any interested person, and after such notice as it may require, make an order denying, limiting, conditioning, regulating, extending, or modifying the use of any enforcement procedure under this chapter."

1 detail below.

2 III.   DISCUSSION

3          At bottom, the parties disagree about the amount of bi-weekly restitution that

4 defendant should continue to pay and the manner of payment.  Plaintiff requests that the court

5 garnish 70 percent or more of defendant's disposable earnings, citing, in part, defendant's

6 household income and continued recent expenditures of over $35,000 at a local casino.

7 Defendant counters that she should be permitted to make "voluntary" restitution payments at a

8 rate of 25 percent of her net income, less amounts exempted for religious tithing and the payment

9 of tax deficiencies.  Based on the parties' briefs the undersigned addresses the following issues

10 presented therein: (1) whether the exemptions expressly claimed by defendant in her Claim for

11 Exemption Form pursuant to 18 U.S.C. § 3613(a)(1) impact the amount to be garnished;

12 (2) whether the Consumer Credit Protection Act, 15 U.S.C. § 1673, limits the amount the court

13 may garnish to a rate of 25 percent of disposable earnings; (3) whether any garnishment should

14 be based on a percentage of defendant's disposable earnings or her "net income"; (4) whether

15 defendant should be granted an "exemption" from garnishment to account for defendant's

16 monthly tithing to her church at a rate of ten percent of defendant's net income; (5) whether

17 defendant should be granted an "exemption" from garnishment to account for defendant's and

18 her husband's payment of outstanding tax deficiencies for the tax years 2009 and 2010; and

19 (6) whether future restitution payments should be made by means of formal garnishment paid by

20 Brasher's Action or through defendant's "voluntary" payments.

21          A.     Exemptions Claimed by Defendant on the Claim for Exemption Form

22          As noted above, two exceptions to enforcement of a judgment pursuant to 18

23 U.S.C. § 3613(a) are relevant here.  In regards to the first exception, 18 U.S.C. § 3613(a)(1)

24 exempts from enforcement of a judgment under federal law property that would be exempt from

25 a levy for taxes pursuant to certain provisions of the Internal Revenue Code, specifically 26

26 U.S.C. §§ 6334(a)(1)-(8), (10), and (12).  See 18 U.S.C. § 3613(a)(1) (providing that "property

7

1  exempt from levy for taxes pursuant to section 6334(a)(1), (2), (3), (4), (5), (6), (7), (8), (10), and

2  (12) of the Internal Revenue Code of 1986 shall be exempt from enforcement of the judgment

3  under Federal law").

4          In connection with seeking a writ of continuing garnishment, plaintiff sent

5  defendant a Claim for Exemption Form, which included descriptions of exemptions including

6  those provided in 26 U.S.C. § 6334(a) and made applicable through 18 U.S.C. § 3613(a)(1).  As

7  noted above, defendant completed the Claim for Exemption Form and claimed exemptions for

8  "Wearing apparel and school books," "Fuel, provisions, furniture, and personal effects," and

9  "Books and tools of the trade, business, or profession."  (Claim for Exemption Form at 1, Dkt.

10  No. 8 at 5.)

11          The exemptions claimed by defendant on the Claim for Exemption Form are

12  ordinarily valid exemptions from garnishment under 18 U.S.C. § 3613(a)(1), which in turn

13  incorporates 26 U.S.C. § 6334(a)(1), (2), and (3), respectively.  However, as plaintiff correctly

14  argues, plaintiff has not sought to garnish any of the items for which plaintiff claims an

15  exemption from garnishment.  Instead, plaintiff only seeks to garnish plaintiff's wages, i.e.,

16  disposable earnings, and the minimum exemption found in 26 U.S.C. § 6334(a)(9) for wages,

17  salary, and other income is not included in the list of exemptions incorporated into 18 U.S.C.

18  § 3613(a)(1).  Accordingly, defendant's expressly claimed exemptions do not impact the court's

19  resolution of the Application.  Moreover, it appears that defendant abandoned these claimed

20  exemptions after retaining counsel; defendant makes no argument in support of these claimed

21  exemptions in the supplemental brief filed by her counsel on her behalf.

22          B.     Application of a 25 Percent Limit on the Garnishment of Wages

23          Plaintiff seeks an order garnishing "at least" 70 percent of defendant's disposable

24  earnings.  Plaintiff's request for garnishment at this percentage rate raises the question of whether

25  the 25 percent limit on garnishment provided in the Consumer Credit Protection Act applies to

26  the garnishment of a judgment debtor's wages in furtherance of payment of a criminal restitution

order.  As set forth below, plaintiff argues that the Consumer Credit Protection Act's protections

for debtors does not apply at all.  Plaintiff's argument appears to be premised on a novel statutory

construction, and plaintiff has cited no court decisions adopting its proposed construction.

Defendant counters that plaintiff's request flies in the face of the plain language of the Consumer

Credit Protection Act, but cites no court decisions rejecting plaintiff's construction.  The

undersigned notes that neither party cited any case law whatsoever.

As noted above, there are two statutory exceptions to 18 U.S.C. § 3613(a).  The

second relevant exception from the enforcement of a judgment imposing a fine is provided in 18

U.S.C. § 3613(a)(3), which provides that "the provisions of section 303 of the Consumer Credit

Protection Act (15 U.S.C. 1673) shall apply to enforcement of the judgment under Federal law or

State law."  18 U.S.C. § 3613(a)(3).  Relevant to the pending Application, the Consumer Credit

Protection Act limits garnishment to 25 percent of disposable earnings per week.  15 U.S.C.

§ 1673(a)(1) (providing that "the maximum part of the aggregate disposable earnings of an

individual for any workweek which is subjected to garnishment may not exceed . . . 25 per

centum of his [or her] disposable earnings for that week"); accord Paul Revere Ins. Group v.

United States, 500 F.3d 957, 962 (9th Cir. 2007).  This provision, entitled "Maximum allowable

garnishment," is subject to statutory exceptions, which are discussed below.  15 U.S.C.

§ 1673(b).  Additionally, 15 U.S.C. § 1673(c) provides that "[n]o court of the United States . . .

may make, execute, or enforce any order or process in violation of this section."

The parties dispute whether the Consumer Credit Protection Act's 25 percent

limitation on garnishment applies in this case.  Defendant's argument is straightforward and is

based on the plain language of 15 U.S.C. § 1673(a)(1), which provides that garnishment "may

not exceed" 25 percent of disposable earnings for a given workweek.  (See Def.'s Dec. 1, 2011

Reply at 2-3.)

Plaintiff's argument in favor of limitless garnishment is less straightforward.  (See

Pl.'s Response at 4; Pl.'s Reply at 3.)  Plaintiff's relies on one of three statutory exceptions to the

Consumer Credit Protection Act's limits on garnishment, which provides that the 25 percent

restriction on garnishment of disposable earnings provided in 15 U.S.C. § 1673(a)(1) does not

apply to "any debt due for any State or Federal tax." 15 U.S.C. § 1673(b)(1)(C). In arguing that

a criminal restitution order is a "Federal tax" excepted from the Consumer Credit Protection

Act's protections, plaintiff relies on 18 U.S.C. § 3613(c), which provides:

> **(c) Lien.**--A fine imposed pursuant to the provisions of subchapter C of
> chapter 227 of this title, or an order of restitution made pursuant to
> sections [*sic*] 2248, 2259, 2264, 2327, 3663, 3663A, or 3664 of this title,
> is a lien in favor of the United States on all property and rights to property
> of the person fined as if the liability of the person fined were a liability for
> a tax assessed under the Internal Revenue Code of 1986. The lien arises
> on the entry of judgment and continues for 20 years or until the liability is
> satisfied, remitted, set aside, or is terminated under subsection (b).

18 U.S.C. § 3613(c) (footnote omitted). Plaintiff focuses on the statutory language that "[a] fine

. . . is a lien in favor of the United States on all property and rights to property of the person fined

as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue

Code of 1986," (Pl.'s Response at 4 (citing 18 U.S.C. § 3613(c)), and notes that 18 U.S.C.

§ 3613(f) makes all provisions in 18 U.S.C. § 3613 available to the government for enforcement

of an order of restitution.[8] Thus, according to plaintiff, a criminal restitution order is in essence a

debt due for a federal tax that renders the 25 percent limit on garnishment provided in the

Consumer Credit Protection Act inapplicable when a criminal restitution order is at issue.

Plaintiff's argument has some initial allure, as the construction offered by plaintiff

is arguably supported, at least on its face, by the relevant patchwork of statutes. However, the

undersigned's primary concern is that plaintiff's construction of 18 U.S.C. § 3613(c) eviscerates

18 U.S.C. § 3613(a)(3) in a manner that Congress could not have possibly intended. In 18

---

[8] Curiously, plaintiff does not focus on the language in 18 U.S.C. § 3613(c) stating that "an order of restitution" is also a lien in favor of the United States. Nor does plaintiff explain why it is not relying on that aspect of 18 U.S.C. § 3613(c). The undersigned does not address whether "the order of restitution" portion of 18 U.S.C. § 3613(c) supports plaintiff's argument in favor of limitless garnishment because plaintiff has not made any such argument.

U.S.C. § 3613(a)(3), Congress plainly provided that the Consumer Credit Protection Act's 25 percent limit on garnishment of disposable earnings applies to the federal government's use of civil procedures to enforce a federal criminal judgment, which includes a fine or restitution order stated therein.[9]  Yet, according to plaintiff, Congress then intentionally negated the 25 percent ceiling on garnishment by adopting 18 U.S.C. § 3613(c), which plaintiff contends removes any percentage limit on garnishment in furtherance of payment of criminal restitution.  It is an unreasonable construction of the relevant statutes that Congress intended to provide criminal judgment debtors protection from limitless garnishment in one statutory subsection and then, in virtually the next stroke of the pen, completely take away the very same protection.  Such a nonsensical construction of 18 U.S.C. § 3613 and 15 U.S.C. § 1673 is ultimately unpersuasive to the undersigned and, accordingly, the undersigned recommends that any garnishment order be limited to 25 percent of defendant's disposable earnings.[10]

As noted above, neither party offered any citations to case law in support of its

---

[9]  The Federal Debt Procedures Act also defines "nonexempt disposable earnings" as "25 percent of disposable earnings, subject to section 303 of the Consumer Credit Protection Act."  28 U.S.C. § 3002(9).

[10]  Additionally, plaintiff has not addressed whether its reliance on 18 U.S.C. § 3613(c) for the proposition that a criminal restitution order is the equivalent of a tax in turn places a 20-year limitation on all garnishment orders entered in furtherance of payment of criminal restitution.  The "lien" provision upon which plaintiff relies provides: "The lien arises on the entry of judgment and continues for 20 years or until the liability is satisfied, remitted, set aside, or is terminated under subsection (b)."  18 U.S.C. § 3613(c).  In turn, 18 U.S.C. § 3613(b) provides: "The liability to pay a fine shall terminate the later of 20 years from the entry of judgment or 20 years after the release from imprisonment of the person fined, or upon the death of the individual fined."  The statutory construction urged by plaintiff, which treats criminal restitution orders as equivalents of criminal fines pursuant to 18 U.S.C. § 3613(f), and in turn construes federal criminal restitution orders as debts for federal taxes, would appear to impose a 20-year expiration date on garnishment orders entered in furtherance of the payment of federal criminal restitution.  Yet plaintiff's construction contradicts the Federal Debt Collection Procedures Act's provisions regarding termination of garnishment, which place no such time limit on garnishment orders.  28 U.S.C. §§ 3205(a), (c)(10).  Although by statute 18 U.S.C. § 3613(c) may permissibly override the Federal Debt Collection Procedures Act's provisions, see 28 U.S.C. § 3001(b), a 20-year limitation on garnishment orders seems an unintended consequence of plaintiff's statutory construction.  Were the court to adopt plaintiff's statutory construction, any garnishment effectuated in this case would appear to expire on or about July 5, 2025, as defendant was released from prison on or about July 5, 2005.

1  legal position.  Neither party explained its efforts to uncover relevant case law, and it is unclear

2  whether the parties conducted any legal research at all.

3          Nevertheless, the undersigned conducted somewhat extensive research in an effort

4  to ascertain whether any court has found proposed plaintiff's statutory construction persuasive.

5  The undersigned has not found any court decision agreeing with plaintiff's argument.  The

6  closest case found by the undersigned is the Fifth Circuit Court of Appeals's decision in United

7  States v. Clayton, 613 F.3d 592 (5th Cir. 2010), in which the court affirmed the district court's

8  final order of garnishment ordering that 100 percent of the defendant's retirement benefits from

9  the New Orleans Baton Rouge Steamship Pilots Association be paid to the United States in

10  furtherance of defendant's payment of a criminal restitution order.  The court held that the

11  Consumer Credit Protection Act's limit on garnishment did not apply because the restitution

12  sought in that case was a "debt due for any . . . Federal tax," and thus subject to the exception

13  from capped garnishment provided in 15 U.S.C. § 1673(b)(1)(C).  See Clayton, 613 F.3d at 596.

14  However, Clayton is distinguishable from this case.  The court in Clayton did not have to address

15  the interaction between the "lien" provision in 18 U.S.C. § 3613(c) and the limitations on

16  garnishment provided in 15 U.S.C. § 1673(a)(1).  The court was not required to discuss that

17  interaction because the defendant had pled guilty to three misdemeanor counts of failing to file

18  income tax returns, and the court concluded that the restitution imposed on the defendant

19  accounted for the defendant's unpaid taxes, payable directly to the Internal Revenue Service.

20  Accordingly, the court held that the restitution owed was a debt due for any federal tax.

21          Although the undersigned found no cases directly supporting plaintiff's position

22  in favor of limitless garnishment, several cases involving the enforcement of criminal judgments,

23  and specifically criminal restitution orders, support the application of the 25 percent cap on

24  garnishment of disposable wages found in both the Consumer Credit Protection Act and the

25  ////

26  ////

Federal Debt Collection Procedures Act.[11]  See United States v. DeCay, 620 F.3d 534, 543-44 (5th Cir. 2010) (holding that because monthly pension benefit payments constitute "earnings" under the Consumer Credit Protection Act, the government could garnish only 25 percent of those payments to satisfy a criminal restitution order); accord United States v. Lee, 659 F.3d 619, 621-22 (7th Cir. 2011) (same); see also United States v. Sloan, 505 F.3d 685, 693 n.15 (7th Cir. 2007) (affirming the district court's grant of a writ of continuing garnishment in furtherance of the payment of criminal restitution and stating that "[t]he Consumer Credit Protection Act, 15 U.S.C. §§ 1671, et seq., prohibits a wage garnishment in excess of 25% of an employee's weekly disposable earnings"); United States v. Bullock, No. 3:03CR218, 2011 WL 486233, at *2 & n.2 (W.D.N.C. Feb. 7, 2011) (unpublished) (noting that the maximum amount that the government may garnish in satisfaction of a criminal judgment is 25 percent of nonexempt disposable earnings); United States v. Miller, 588 F. Supp. 2d 789, 798 (W.D. Mich. 2008) ("If the Court enters the proposed order of garnishment, the United States may seize only twenty-five percent, the maximum permitted by statute.") (citing 15 U.S.C. § 1673(a), and Sloan, 505 F.3d at 693); United States v. Ogburn, 499 F. Supp. 2d 28, 30 (D.D.C. 2007) (considering the argument that garnishment at a rate of  25 percent is mandatory and stating that the "majority of the case law, limited as it is, holds that 25 percent is a ceiling, not a floor, for the amount to be garnished and that courts have authority to impose an amount below 25 percent"); United States v. Baldwin, No. 3:98cr215, 2006 WL 2085278, at *3 & n.5 (D. Conn. July 24, 2006) (unpublished) (stating that pursuant to the Federal Debt Collection Procedures Act, the government may garnish up to 25 percent of disposable earnings); United States v. George, 144 F. Supp. 2d 161, 165 (E.D.N.Y. 2001) (stating that "nothing in the FDCPA states that 25% of nonexempt disposable income is the mandatory amount of any federal garnishment under the FDCPA; rather, all the pertinent

---

[11]  The undersigned notes a dearth of cases in which the United States has taken a position similar to the one taken in this case.  Indeed, in one case, a district court apparently ordered 100 percent garnishment of the debtor's retirement payments, but the government only decided to collect payments at a rate of 25 percent.  See United States v. Tafoya, 803 F.2d 140, 141 n.3 (5th Cir. 1986).

statutory language indicates that 25% is a maximum figure"); <u>United States v. Kaye</u>, 93 F. Supp. 2d 196, 197-98 (D. Conn. 2000) (stating in the context of an application for a writ of wage garnishment for payment of criminal restitution, 15 U.S.C. § 1673 "sets a maximum reach for a garnishment at 25% of disposable earnings or the excess of his disposable earnings over thirty times the minimum hourly wage . . . , whichever is less").  In the overwhelming majority of these cases, courts have regularly decided without much discussion that the 25 percent ceiling on garnishment of disposable earnings applies to orders of garnishment entered in furtherance of payment of criminal restitution orders.  The undersigned agrees with these cases and concludes that the 25 percent ceiling on wage garnishment applies here.

Additionally, the undersigned notes that evidence in the record suggests that plaintiff may not be entirely convinced of its position that the Consumer Credit Protection Act's garnishment limits do not apply.  As the undersigned noted at the November 10, 2011 hearing, the government's Claim for Exemption Form specifically advises criminal judgment debtors that the Consumer Credit Protection Act's 25 percent limit on garnishment *automatically* applies and need not even be claimed by the debtor.  In relevant part, the form states:

> 11.  **Minimum exemptions for wages, salary and other income.**  The exemptions under 26 U.S.C. § 3664(a)(9) do not apply in criminal cases.  *The exceptions under the Consumer Credit Protection Act, 15 U.S.C. § 1673, for disposable earnings, automatically apply and do not need to be claimed.  The aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed (1) 25% of his/her disposable earnings for that week . . . .*

(Claim for Exemption Form at 2 (emphasis added); <u>see also</u> Dkt. No. 6, Doc. No. 6-3 (un-executed Claim for Exemption Form).)  When asked about this statement in the Claim for Exemption form, plaintiff's counsel did not have an explanation for the government's inclusion of such language in the form given to judgment debtors that directly contradicts the government's legal position in these garnishment proceedings.  The undersigned need not determine whether plaintiff should be estopped from seeking garnishment in excess of 25 percent of defendant's

14

1 | disposable earnings.  It is enough to highlight plaintiff's contradictory positions asserted in this
2 | case.

3 | Based on the foregoing, the undersigned concludes that plaintiff's construction of
4 | the relevant statutes is untenable and that the 25 percent limit on garnishment of disposable
5 | earnings applies in this case.  The record, including defendant's exorbitant gambling
6 | expenditures, supports garnishment at a rate of 25 percent of bi-weekly disposable earnings.
7 | Accordingly, the undersigned recommends that plaintiff's Application be granted and that the
8 | court order that defendant's bi-weekly disposable earnings be garnished at a rate of 25 percent.
9 | The remainder of these findings and recommendations addresses defendant's various arguments
10 | in favor of specific deductions from the base disposable earnings from which garnishment is to
11 | be calculated, as well as defendant's arguments regarding the logistics of future restitution
12 | payments.

13 | C.    Garnishment of Net Income Versus Disposable Earnings

14 | Without explanation, defendant requests in passing that her future restitution
15 | payments be determined based on a percentage of what she refers to as her bi-weekly "net
16 | income" of $1,938.72, as opposed to defendant's bi-weekly disposable earnings of $2,097.73.
17 | (See Def.'s Dec. 1, 2011 Reply at 3-4, 6; see also Thomas Decl. ¶ 5 & Ex. A; Answer of
18 | Garnishee at 2.)  The difference between these figures is approximately $159, which is the
19 | approximate amount of money defendant voluntarily contributes to her employee-sponsored
20 | retirement account, or 401(k) account.  (See Answer of Garnishee at 2.)

21 | In short, defendant has offered no legal or factual support for the proposition that
22 | the amount of garnishment must or should be calculated as a percentage of net income as
23 | opposed to disposable earnings.  Instead, federal statutes address garnishment in terms of
24 | disposable earnings, see 15 U.S.C. § 1673(a); 28 U.S.C. § 3205(a), and the term "disposable
25 | earnings" is defined as "that part of earnings remaining after all deductions required by law have
26 | been withheld," 28 U.S.C. § 3002(5).  Voluntary contributions to individual retirement accounts,

15

1   such as 401(k) accounts, are by their nature not deductions "required by law" that are excluded in

2   calculating disposable earnings.  Accordingly, the undersigned recommends that the percentage

3   garnishment be based on defendant's disposable earnings, which are presently $2,097.73 per

4   two-week period.

5          D.      Defendant's Request for Exemptions for Tithing and Paying Tax Deficiencies

6                  In addition to requesting that any garnishment order be limited to 25 percent of

7   her net income, defendant requests two additional "exemptions" from such an order.  First,

8   defendant requests that "she be allowed to exempt up to 10% of her net pay for tithing" to her

9   church.  (Def.'s Dec. 1, 2011 Reply at 5.)  Second, defendant requests an exemption of $275 per

10  month for approximately the next two years, which accounts for half of her and her husband's

11  monthly payments for defendant's state and federal tax deficiencies.  (Id.)  The undersigned

12  addresses each requested exemption below.[12]

13             1.      Exemption for Religious Tithing

14                  Defendant's first requested "exemption" concerns defendant's desire to pay a tithe

15  on a monthly basis to her church, the Church of Latter Day Saints.[13]  (See Def.'s Dec. 1, 2011

16  Reply at 4-5; Thomas Decl. ¶¶ 9-12.)  Specifically, defendant requests that "she be allowed to

17  exempt up to 10% of her net pay for tithing, subject to proof of actual payments provided every

18  180 days, or whatever the court deems appropriate."  (Def.'s Dec. 1, 2011 Reply at 5.)

19  _____

20      [12]  Defendant further indicates, without any supporting documentation, that she intends to
    seek counseling for her gambling addiction, and that such counseling will cost $80 per month.
21  (Def.'s Dec. 1, 2011 Reply at 6.)  Defendant intimates that she might seek an additional exemption
    for counseling-related payments in the future.  (Id.)  The undersigned notes plaintiff's objection to
22  any such exemption (Pl.'s Reply at 3-4), but the court need not address defendant's possible
    payments for intended counseling because defendant has not actually requested an exemption for
23  counseling-related expenses.  The undersigned notes, however, that the court will take a dim view
    to any such request in the future that is not amply supported by legal authority and documentation.
24  Defendant's efforts to date have been sub-standard.

25      [13]  The term "tithe" is defined as "one tenth of annual produce or earnings, formerly taken
    as a tax for the support of the Church and clergy."  Oxford Concise English Dictionary 1503 (Judy
26  Pearsall ed., Oxford Univ. Press, 10th ed. 1999).

Defendant previously raised this issue in her initial response to the Application and at the

November 10, 2011 hearing, citing the positive impact that religion has had on defendant's

rehabilitation.  Despite the laudable, positive impact of religion on defendant, the undersigned

recommends that defendant's request be denied.

Defendant's declaration represents that following her arrest and conviction in the

underlying criminal case, she was placed on "disfellowship" with her church.  (Thomas Decl.

¶ 9.)  She declares that upon her release from prison, she was required to meet with her bishop on

a monthly basis "to prove [her] devotion and worthiness to be allowed back into [her] church."

(Id.)  Defendant regained her fellowship in approximately 2009 and now can attend her church.

(Id.)  However, defendant declares that she has not regained the privilege to attend her temple,

which is an important part of her faith.  (Id. ¶ 10.)  Defendant declares that to regain "Temple

rights," she must meet with her bishop once per year and demonstrate her devotion to her faith.

(Id. ¶ 11.)  Defendant further declares that one "aspect that is necessary to demonstrate is

tithing."  (Id.)  Accordingly, defendant seeks an exemption to account for tithing payments to her

church.

As an initial matter, defendant has cited no legal authority supporting the grant of

an "exemption" from garnishment for the purpose of tithing.  Although defendant has vaguely

hinted in passing that not granting such an exemption might impinge on defendant's rights to

association and free exercise of religion provided by the First Amendment to the United States

Constitution[14] (Def.'s Dec. 1, 2011 Reply at 4), defendant has provided no legal authority or

argument whatsoever supporting the proposition that the court's denial of a tithing exemption

////

////

---

[14]  The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances."  U.S. Const., amend. I.

1  from garnishment would constitute a First Amendment violation.[15]  For this lack of legal support

2  alone, defendant's request should be denied.

3          Additionally, defendant failed to provide factual support for the proposition that

4  she would be prevented from attending her church or temple if she failed to pay her tithe.

5  Indeed, defendant has declared that she has been an active member of her church since

6  approximately 2009.  (Thomas Decl. ¶ 9.)  Defendant completely ignored the court's clear

7  direction to her at the November 10, 2011 hearing that she provide documentation in the form of

8  a declaration from a church official substantiating that the failure to tithe necessarily and without

9  exception prevents defendant from practicing her religion or attending temple.  For example, it is

10  not clear to the court that defendant's church would not consider any amount of garnishment akin

11  to a tax, such that defendant's net income subject to tithing would be reduced.  Defendant also

12  provided no documentation supporting the proposition that tithing in an amount of ten percent of

13  net income per month is mandatory and subject to no exceptions; instead, defendant merely

14  represents that "[i]t is *traditional* that persons of my faith tithe 10% of their income."  (Id. ¶ 11

15  (emphasis added); see also Def.'s Dec. 1, 2011 Reply at 5 ("According to tradition, a practitioner

16  *should* tithe 10% of their income after taxes.") (emphasis added).)  Accordingly, due to the lack

17  of adequate documentation from defendant, the undersigned recommends that defendant's

18  requested exemption be denied on this additional ground.

19          In short, defendant has provided insufficient legal and factual support for her

20  requested exemption for tithing expenditures.  Accordingly, the undersigned recommends that

21  defendant's request for such an exemption be denied.

22          2.     Exemption to Pay Tax Deficiencies

23          Defendant's second requested exemption is for a $275 per month reduction for the

24

25          [15]  Defendant's supplemental brief merely states: "Ms. Thomas recognizes her duty to pay
restitution in this case; however, she requests the court to consider her 1st Amendment rights to

26  freedom of religion and association."  (Def.'s Dec. 1, 2011 Reply at 4.)

1 next two years, presumably deducted from defendant's "net income," to permit her to continue

2 paying tax deficiencies with the Internal Revenue Service and the California Franchise Tax

3 Board.  (See Def.'s Dec. 1, 2011 Reply at 5.)  Although defendant's brief presents the matter in a

4 perfunctory manner, defendant declaration states:

> I have a combined outstanding tax balance owed to the IRS and State
> Franchise Tax Board in the approximate amounts of $4,500.00 and
> $5,500.00 respectively.  My husband and I are making payments in the
> amount of $550.00 per month.  I am requesting an exemption in the
> amount of $275.00 per month, equaling $125 per pay period.

8 (Thomas Decl. ¶ 6.)

9            The undersigned recommends that defendant's request for a $275 per month

10 exemption or reduction of her disposable earnings so that defendant may pay money toward her

11 tax deficiencies be denied.  Simply put, defendant has cited no statutory or other legal basis for

12 such an exemption.  Moreover, defendant has provided no factual documentation supporting her

13 request.  Although plaintiff has documented some of defendant's and her husband's tax payment

14 obligations and payments, that documentation provides an incomplete picture of the tax payment

15 obligations and history.  In any event, it is not plaintiff's responsibility to substantiate

16 defendant's requested exemption.  Additionally, the rate of recommended garnishment provided

17 herein is not so onerous in light of defendant's monthly household income to warrant an

18 exemption of the sort requested by defendant.  Accordingly, defendant's request for a $275 per

19 month exemption from garnishment to last two years should be denied.

20            E.    Garnishment Versus Voluntary Payments

21            Finally, defendant requests that rather than order the garnishment of her wages,

22 the court permit defendant to "voluntarily make payments to avoid problem [sic] at her work."

23 (Def.'s Dec. 1, 2011 Reply at 6-7; see also Thomas Decl. ¶ 13 ("I believe that garnishment would

24 subject me to unnecessary problems in my place of work.").)  Plaintiff objects to a voluntary

25 payment arrangement.  (See Pl.'s Reply at 7-8; Pl.'s Suppl. Info. Re Writ of Continuing

26 Garnishment (Wages), Dkt. No. 25.)

19

1         The undersigned finds no basis to permit voluntary payments in lieu of

2  garnishment.  First, defendant has not factually substantiated that garnishment would cause any

3  "problems" at work or even suggested what sort of problems might arise.  Instead, she has only

4  declared in conclusory fashion that she "believes" that garnishment would cause unspecified

5  problems at work.  (Thomas Decl. ¶ 13.)  To the extent that defendant intended to intimate that

6  she might suffer damage to her reputation or position at Brasher's Auction as a result of

7  garnishment, such an argument contradicts defendant's earlier statements in response to the

8  Application.  In defendant's August 4, 2011 letter accompanying her request for a hearing

9  regarding the Application, defendant stated:

> I started out here at $11.00 an hour and now am a manager of the Factory
> Dept. at Brashers Sacramento Auto Auction.  I have proved that I can be
> trusted with both the managing of people and everything that goes along
> with the business.  I have disclosed everything about my past, and they
> have given me a second chance, and I am so blessed to have this chance.

13  (Letter, Aug. 4, 2011, Dkt. No. 9.)  Rather than forecasting problems at work, defendant's

14  statements reflect that she has disclosed her criminal history to Brasher's Auction and that her

15  employer ultimately promoted defendant to a management position and tripled her wages.

16  Nothing about defendant's filings suggests problems that might result from garnishment.

17         Second, garnishment will provide plaintiff, the victims in the underlying case, and

18  the court with certainty regarding defendant's present income and restitution payments.  The

19  parties' filings reflect that plaintiff has struggled to ascertain reliable and timely information

20  about defendant's wages.  For example, plaintiff recently filed a notice concerning the non-

21  payment of restitution under the court's November 14, 2011 interim order, which required that

22  defendant pay 25 percent of her gross pay directly to plaintiff's counsel.  Plaintiff represents that

23  it fortuitously learned that on or about November 15, 2011, defendant redeemed accrued vacation

24  hours for cash in an amount of $3,425.64, but failed to notify plaintiff's counsel of that additional

25  income or pay 25 percent of that income to plaintiff's counsel in accordance with the interim

26  order.  (See Montoya Decl. ¶¶ 3-5 & Ex. A, Dkt. No. 25, Doc. No. 25-1.)  Plaintiff's counsel

1  subsequently demanded payment from defendant.  (Id. ¶ 6.)  Garnishment of defendant's wages

2  from her employer would hopefully avoid similar incidents in the future.

3         Based on the foregoing, defendant has offered no persuasive reason to permit

4  voluntary payments.  Accordingly, the undersigned recommends that defendant's restitution

5  payments be made by way of garnishment, rather than voluntary payments by defendant.

6  III.   CONCLUSION

7         For the foregoing reasons, IT IS HEREBY RECOMMENDED that plaintiff's

8  amended application for a writ of continuing garnishment be granted, and that a final order of

9  garnishment be entered that garnishes 25 percent of defendant's bi-weekly "disposable earnings."

10         These findings and recommendations are submitted to the United States District

11  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen

12  days after being served with these findings and recommendations, any party may file written

13  objections with the court and serve a copy on all parties.  Id.; see also E. Dist. Local Rule 304(b).

14  Such a document should be captioned "Objections to Magistrate Judge's Findings and

15  Recommendations."  Any response to the objections shall be filed with the court and served on

16  all parties within fourteen days after service of the objections.  E. Dist. Local Rule 304(d).

17  Failure to file objections within the specified time may waive the right to appeal the District

18  Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d

19  1153, 1156-57 (9th Cir. 1991).

20         IT IS SO RECOMMENDED.

21  DATED: January 17, 2012

22

23                                    _____

24                                    KENDALL J. NEWMAN
                                      UNITED STATES MAGISTRATE JUDGE

25

26

21